

E

112167-CV

CAUSE NO. _____

Filed
Submitted 5/30/2024 1:35 PM
Stephnie Menke
District Clerk Potter County, Texas
Envelope No. 88266804
Filed: 5/30/2024 2:54 PM
By: PB

CHELSEA   KROGER   ACOSTA,     §   IN THE ___108th___ DISTRICT COURT
INDIVIDUALLY   AND   AS   NEXT   §
FRIEND   AND   AS   INDEPENDENT   §
ADMINISTRATOR OF THE ESTATE OF   §
EMERSON  KATE  COLE,  DECEASED,   §
AND CAROLE KROGER,     §
        §
        *Plaintiffs,*     §   IN AND FOR
        §
        §
v.        §
        §
AMARILLO   INDEPENDENT   SCHOOL   §
DISTRICT        §
        §
        *Defendant.*     §   POTTER COUNTY, TEXAS

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs CHELSEA KROGER ACOSTA, Individually and as Next
Friend and as Independent Administrator of the Estate of EMERSON KATE COLE, Deceased, and
CAROLE KROGER ("Plaintiffs"), and files this their Original Petition complaining of
AMARILLO INDEPENDENT SCHOOL DISTRICT ("Defendant Amarillo ISD"), and would
respectfully show the Court the Following:

### 1.00   RULE 190 DESIGNATION

Plaintiffs allege that discovery should be conducted under a Level 3 discovery
control plan pursuant to Rule 190 of the Texas Rules of Civil Procedure.

### 2.00   PARTIES

2.01   Plaintiff **Chelsea Kroger Acosta, Individually and as Next Friend and as
Independent Administrator of the Estate of Emerson Kate Cole, Deceased ("Plaintiff Chelsea
Acosta")** is an individual citizen of the State of Texas and a resident of Potter County. Chelsea
Acosta brings this suit as Emerson Kate Cole's mother.

1

2.02    Plaintiff **Carole Kroger ("Plaintiff Carole Kroger")** is an individual citizen of the State of Texas and a resident of Potter County, Texas.  Carole Kroger is the grandmother of Emerson Kate Cole.  Carole Kroger performed CPR on Emerson Kate Cole during the incident made the basis of this lawsuit.

2.03    Defendant **Amarillo Independent School District ("AISD")** is a school district organized under the laws of the State of Texas. At all times pertinent to this case, Emerson Kate Cole was a student at AISD. **This Defendant may be served by and through its Superintendent, Doug Loomis, 7200 Interstate 40 West, Amarillo, Texas 79106-2598.**

**3.00    JURISDICTION AND VENUE**

3.01    This Court has jurisdiction over this cause because the amount in controversy is in excess of the minimum jurisdictional limits of the Court.

3.02    Venue for this action is proper in Potter County, Texas, pursuant, but not limited to, Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code, in that all or a substantial part of the events or omissions giving rise to this case occurred in Potter County, Texas.

**4.00    NATURE AND PURPOSE OF THE ACTION**

4.01    Emerson Kate Cole was born on April 4, 2012. At the time of the incident made subject of this lawsuit, Emerson was a student at Lorenzo de Zavala Middle School.

4.02    Emerson was diagnosed with a severe allergy to dairy. As part of her allergy treatment, Emerson had a 504 Action Plan on file with Amarillo ISD, which detailed the procedures that school employees should take in the event Emerson experienced an allergic reaction. Specifically, the Action Plan required that in the event Emerson began having an allergic reaction, school personnel were to administer epinephrine, call emergency medical services and notify Emerson's parents. Emerson's condition qualifies her as an individual with a disability, pursuant to the Americans with Disabilities Act, 28 U.S.C. § 12102.

2

4.03    On January 17, 2023, Emerson Kate Cole had an allergic reaction at Lorenzo de Zavala Middle School. Emerson was not administered epinephrine and on January 19, 2023, she passed away as a result of anaphylaxis.

**5.00    BACKGROUND FACTS**

5.01    On or about January 17, 2023, Emerson Kate Cole was eating her lunch in the cafeteria of Lorenzo de Zavala Middle School.

5.02    Emerson began experiencing an allergic reaction and went to the nurse's office. When Emerson arrived at the nurse's office, the school nurse was not there.   A school official then called Plaintiff Chelsea Acosta and asked if they could give Emerson Cole a Benadryl to help with her allergic reaction.  Plaintiff Chelsea Acosta said yes.  Emerson was then given Benadryl but became sick and threw up.  In the meantime, Emerson's grandmother, Carole Kroger, headed to the school.  When Carole Kroger arrived at the school, she went to the school's office where she was told that the office was calling 911.  Carole Kroger then went back to her car to get her cell phone and call the Amarillo Fire Department Station #11 located at 2401 N. Coulter Street. When Carole Kroger reached the Amarillo Fire Department Station #11 they informed her that they had just received the emergency call from the school and were headed to the school.  Carole Kroger then went back into the school nurse's office, where Emerson was struggling with a breathing treatment and collapsed.  Carole Kroger then placed Emerson on the floor to start administering CPR.  Shortly thereafter, the Amarillo Fire Department Station #11 crew arrived and took over care of Emerson.

5.03    At approximately 12:34 p.m., the ambulance arrived at Lorenzo De Zavala Middle School and the EMS personnel began treating Emerson for cardiac/respiratory arrest and preparing her for transport to Northwest Texas Hospital (NWTH).   Emerson was transported to the

3

Emergency Room at NWTH. Emerson passed away two days later on January 19, 2023. Emerson was eleven years old at the time of her passing.

5.04   Plaintiffs claim that the Amarillo Independent School District failed to implement policies, procedures and practices required to keep Emerson Kate Cole safe in the manner and particulars noted herein.

5.05   For these and other violations, Plaintiff Chelsea Acosta seeks damages and compensation as the mother or Emerson Kate Cole and as the Administrator of the Estate of Emerson Kate Cole, for the injuries more fully discussed below.  A true and correct copy of the Letters of Administration issued to Plaintiff Chelsea Kroger is attached as **Exhibit "A."** Plaintiffs bring this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq ("ADA").

5.06   The incident referred to above was a proximate cause of injuries and damages to Plaintiffs, for which they now sue.

**6.00**   <u>**CAUSES OF ACTION**</u>

6.01   <u>Negligence</u>

As stated herein, Emerson was diagnosed with a severe allergy to dairy. As part of her allergy treatment, Emerson had a 504 Action Plan on file with Amarillo ISD, which detailed the procedures that school employees should take in the event Emerson experienced an allergic reaction. Specifically, the 504 Action Plan required that in the event Emerson began having an allergic reaction, school personnel were to administer epinephrine, call emergency medical services and notify Emerson's parents. Defendant Amarillo ISD knew that Emerson Kate Cole had a 504 Action Plan on file and negligently failed to follow the 504 Action Plan by failing to administer epinephrine to Emerson Kate Cole while she was having an allergic reaction at Lorenzo

De Zavala Middle School.  As a result of Defendant Amarillo ISD's failure to comply with the 504 Action Plan, Emerson Kate Cole died.

At all relevant times, Defendant Amarillo ISD was negligent in failing to exercise the ordinary care of a reasonable and prudent school district under the same or similar circumstances by:

    a.    Failing to follow the 504 Action Plan for Emerson Kate Cole;

    b.    Failing to administer epinephrine to Emerson Kate Cole when she was having an allergic reaction;

    c.    Failing to adequately monitor Emerson Kate Cole during her allergic reaction;

    d.    Failing to promulgate and implement adequate policies and procedures to prevent occurrences such as the one made the basis of this lawsuit;

    e.    Failing to establish policies and procedures to adequately administer medications to students who have a disability and/or have been diagnosed with a medical condition that requires the administration of medication;

    f.    Failing to establish proper training programs for its school employees to prevent such occurrences such as the one made the basis of this lawsuit;

    g.    Failing to properly monitor and react to students having an allergic reaction during school hours; and

    h.    Failing to have adequate staff on site during a medical emergency like the one made the basis of this lawsuit.

6.02   <u>Negligence Per Se</u>:   Defendant AISD's negligent conduct as described above amounts to violations of governmental regulations and/or statutes and constitutes negligence per se.  Plaintiffs were members of the class of persons that the governmental regulations and/or statutes were designed to protect, and the Plaintiffs' injuries are of the type that the governmental regulations and/or statutes were designed to prevent.   These regulatory and/or statutory violations proximately caused the occurrence in question and the resulting injuries and damages sustained by the Plaintiffs.

6.03    Vicarious Liability/Respondeat Superior: In addition, Defendant Amarillo ISD is independently liable under the doctrines of respondeat superior, vicarious liability and/or agency for the damages proximately caused to Plaintiffs by the negligent and negligent per se conduct of its employees as described herein, in that one or more of these employees were acting within the course and scope of their employment when that conduct occurred.

6.04    Americans With Disabilities Act

Plaintiffs re-allege the foregoing paragraphs in support of her claim.

Emerson's condition qualifies her as an individual with a disability, pursuant to the Americans with Disabilities Act, 28 U.S.C. § 12102.  Emerson Kate Cole was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2), with her allergy affecting her major life activities, as noted above.

On January 17, 2023, Emerson Kate Cole had an allergic reaction at Lorenzo de Zavala Middle School. Emerson was not administered epinephrine, per her emergency Action Plan, and on January 19, 2023, she passed away as a result of anaphylaxis.

The facts as previously described demonstrate violations of the Americans with Disabilities Act, 24 U.S.C. § 12131 et seq ("ADA").

Amarillo Independent School District is deemed a "public entity" as defined in 42 U.S.C. § 12131(1). Amarillo ISD also receives federal financial assistance so as to be covered by the mandate of the ADA.

Amarillo ISD refused to reasonably accommodate Emerson's disability and modify their services in violation of Title II of the ADA by not having a safe and non-hostile educational environment. Such failures caused injuries to Emerson Kate Cole, leading to her death.

Emerson was a victim of discrimination based upon disability by the acts and omissions of Amarillo ISD.

6.05    Bystander – Plaintiff Carole Kroger

As stated above, Plaintiff Carole Kroger performed CPR on her granddaughter, Emerson Kate Cole, at Lorenzo De Zavala Middle School during the incident made the basis of this suit. Plaintiff Carole Kroger is closely related to Emerson Kate Cole as she is Emerson Kate Cole's maternal grandmother. Plaintiff Carole Kroger was a direct participant in the treatment of Emerson Kate Cole and, as a result of her direct participation, Plaintiff Carole Kroger suffered damages due to the direct emotional impact on her as a result of the incident made the basis of this suit.

Each of the above-described acts and/or omissions of Defendant, singularly and/or in combination with others, constituted negligence, which proximately caused the occurrence in question and the resulting injuries and damages sustained by the Plaintiffs.

**7.00    CONDITIONS PRECEDENT**

7.01    All conditions precedent to Plaintiffs' rights to recover the relief sought herein have occurred or have been performed.

**8.0    INJURIES AND DAMAGES**

8.01    Plaintiffs and Plaintiff Carole Kroger incorporate by reference all the above related paragraphs, as if fully set forth. As a direct and proximate result of the actions of AISD, Emerson Kate Cole died. As a result of AISD's acts and/or omissions that led to the death of Emerson Kate Cole, Plaintiffs are entitled to damages including, but not limited to, the following:

8.02    Wrongful Death Damages. The acts and/or omissions of AISD proximately caused the death of Emerson Kate Cole. Plaintiffs assert all damages recoverable pursuant to the Texas Wrongful Death statute, Tex. Civ. Prac. & Rem. Code § 71.001, including, but not limited to, the following:

a.    Medical expenses for Emerson Kate Cole;
b.    Physical pain and suffering endured by Emerson Kate Cole prior to her death;
c.    Mental anguish and suffering experienced by Emerson Kate Cole prior to her death;
d.    Past and future loss of consortium with Emerson Kate Cole;

7

e.     Past and future pecuniary loss;

f.     Past and future mental anguish, grief, and sorrow including the emotional pain, torment and suffering the Plaintiffs experienced due to the death of Emreson Kate Cole; and

g.     Funeral and burial expenses.

8.03   <u>Survival Damages</u>.  The acts and/or omissions of AISD proximately caused the death of Emerson Kate Cole.  Plaintiffs assert all damages recoverable pursuant to the Texas Survival Statue, Tex. Civ. Prac. & Rem. Code § 71.021, including:

The physical pain experienced by Emerson Kate Cole prior to her death;

The mental anguish and suffering experienced by Emerson Kate Cole prior to her death;

The medical expenses incurred by Emerson Kate Cole prior to her death; and

The funeral and burial expenses associated with Emerson Kate Cole's death.

8.04   <u>Exemplary Damages</u>.  Plaintiffs are entitled to exemplary damages  under Chapter 41 of the Texas Civil Practice and Remedies Code because Defendant's acts and/or omissions, when viewed objectively from the standpoint of Defendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

8.05   <u>Americans With Disabilities Act Damages</u>.  The AISD violations of the Americans with Disabilities Act proximately caused the death of Emerson Kate Cole.  Plaintiff Chelsea Acosta, Individually and as Next Friend and as the Independent Administrator of the Estate of Emerson Kate Cole, Deceased, asserts all damages recoverable pursuant to the Americans With Disabilities Act.

8.06   <u>Bystander Damages – Plaintiff Carole Kroger</u>.  Plaintiff Carole Kroger asserts all damages recoverable by her for the past and future mental anguish that resulted from her direct

8

participation in the care and treatment of Emerson Kate Cole as a result of the incident made the basis of this suit.

8.07   <u>Attorney fees</u>.  It was necessary for Plaintiffs to hire the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney's fees and costs under 42 U.S.C. § 12205 of the ADA.

**9.00   TEXAS CIVIL PRACTICE & REMEDIES CODE § 74.351**

9.01   Pursuant to Section 74.351 of the Texas Civil Practice & Remedies Code, Plaintiffs hereby attach as **Exhibits "B" and "C"** true and correct copies of the expert reports, along with curriculum vitae, of the following expert witness:

a.   **Mark Serota, M.D., FAAD, FAAAI, FACAAI (Exhibit "B");** and

b.   **Monica Porras, MSN, RN, NCSN (Exhibit "C").**

**10.00   TEXAS RULE OF CIVIL PROCEDURE 193.7 NOTICE**

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby give actual notice to Defendant that any and all documents produced in response to written discovery may be used as evidence in this case; and that any such materials may be used as evidence against the party producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the document and/or materials produced in discovery.

**11.00   JURY DEMAND**

11.01   Plaintiffs respectfully request that this cause of action be placed on a jury docket of this Court and submit the required jury fee with the filing of this Original Petition.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Chelsea Kroger Acosta, Individually and as Next Friend and as Independent Administrator of the Estate of Emerson Kate Cole, Deceased, and Carole Kroger pray that Defendant Amarillo Independent School District be

9

cited to appear and answer in this lawsuit, and that upon the final trial thereof, Plaintiffs have and recover as follows:

a.    Judgment against Defendant for actual damages in a sum in excess of the minimum jurisdictional limits of this Court;

b.    Judgment against Defendant for violations of the Americans with Disabilities Act;

c.    Exemplary damages;

d.    Prejudgment and post judgment interest at the highest legal rate permitted by law;

e.    Costs of Court;

f.    Attorney's fees; and

g.    Any and all such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Dated: May 30, 2024.

Respectfully submitted,

LOVELL, ISERN & FARABOUGH, LLP
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101
Telephone: (806) 373-1515
Facsimile: (806) 379-7176
Email: kevin@lovell-law.net

By: /s/ *Kevin A. Isern*
    Kevin A. Isern
    State Bar No. 10432900

**ATTORNEYS FOR PLAINTIFFS CHELSEA KROGER ACOSTA, INDIVIDUALLY AND AS NEXT FRIEND AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF EMERSON KATE COLE, DECEASED, AND CAROLE KROGER**

# EXHIBIT "A"

Letters of Administration issued July 10, 2023



## LETTERS OF ADMINISTRATION
### THE STATE OF TEXAS
County Court

**Cause No.** CCPR-23-110
**ESTATE OF Emerson Kate Cole**

I, **JULIE SMITH,** *County Clerk and Clerk of the County Court, in and for Potter County, Texas, hereby certify that on 10th day of July, 2023, the* **Court,** *having jurisdiction over the Probate Matter has appointed*

*Chelsea Kroger*

*as the Independent Administrator of the Estate of:*

*Emerson Kate Cole Deceased*

*and the aforementioned appointee, having taken the oath prescribed by law, is duly qualified and fully and legally authorized and empowered to act on behalf of the above named Estate.*

*WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE, on this the 10th day of July, 2023.*

**JULIE SMITH,** *County Clerk*
**Potter County, Texas**

By: *Selena Edwards* , *Deputy*
*Selena Edwards*

# EXHIBIT "B"

## Expert Report of Mark Serota, M.D., FAAD, FAAAL, FACAAI



**Marc Serota M.D., FAAD, FAAAI, FACAAI**
Board Certified: Dermatology, Allergy/Immunology, Pediatrics

**Medical Expert Report**

3/16/24

I, Dr. Marc Serota am board-certified in Allergy/Immunology as well as Dermatology and Pediatrics. I diagnose manage and treat food allergies as a routine part of my practice and lecture nationally regarding various allergic and dermatologic subjects including food allergy.

**Records Reviewed:**

Cole_0001-0005 AISD New Rules re EPI use - Ch. 38 Education Code 2023-08-10.pdf (5 pages)
2023-04-10 KAI Notice and Preservation.pdf (4 pages)
AFD_1-6.pdf (7 pages)
AMR_1-19_Redacted.pdf (20 pages)
NWTH_1-622.pdf (623 pages)
AMR_C1_Redacted.pdf (2 pages)
NWTH_C1-12.pdf (13 pages)
TP_C1-2_Redacted.pdf (3 pages)

**Summary of events**

This summary is intended for reference only.  The reader should refer to primary documents for a complete accounting of events and medical history.

On January 17, 2023 Emerson Cole developed an anaphylactic reaction which resulted in her death.  She had a prior known history to milk and had an epinephrine autoinjector stored at her school in the nurse's office.

Emerson presented to the nurse's office where she was given Benadryl, which she subsequently threw up. Emerson was then given albuterol breathing treatment's but she could not breathe as a result of the allergic reaction.  Emerson's grandmother, Carole Kroger, arrived at Lorenzo De Zavala Middle School and witnessed Emerson trying to take her breathing treatments and then passing out. 9-1-1 was called for Emerson. Carole Kroger then pulled Emerson to the ground and started CPR.

Per Amarillo Fire Department records:

"E11 responded priority 1 on a cardiac to find a 10yo female lying supine on the floor with a family member giving rescue breaths. Family stated that the pt had an allergic reaction and that she had asthma. The pt had CPR prior to our arrival and had regained a pulse. The schools AED was on the pt. E11 assisted with a BVM, administering an injection of Epi in the right arm. The pt became unconscious and pulseless, E11 began CPR and placed our AED on the pt. AMS arrived, E11 started an IO in the right leg and administered Epi. E11 assisted AMS in loading the pt and sent 2 riders. E11 retrieved our riders and returned to service."

Per Emergency Department records (Dr. Spencer Pruitt):

"EMERSON KATE is 10 Years old Female with asthma, eosinophilic esophagitis, and anaphylaxis presenting with the above complaints. History provided by the father.

Reports that she was in her usual state of health when she left for school. In the school she had difficulty breathing right after having 1 bite of pizza (the pizza contains the dairy products which she is allergic to). She was complaining of difficulty breathing and was brought to the nurse office.  She took Benadryl, but vomited right after. She received x1 albuterol breathing treatment, she was having difficulty while taking the breathing treatment. 15 minutes after, the patient was fighting to breathe and was cyanosed and diaphoresis. Grandmother started mouth-to-mouth resuscitation and grandmother started the chest compression. 911 was

called and the resuscitation effort was continued. She received IM epinephrine. ED provider intubated on the way to the ED. Patient received x3 epinephrine on the way with no ROSC. IV was attempted.

At the time of our arrival to the ED, patient was receiving compression and was intubated. Resuscitation effort was ongoing."

…"Blood gas with respiratory acidosis with PCO2 ranging from 102-115. Patient started on mechanical ventilation. Talked with Dr. Muelmester (PICU @ cook childrens) by Dr. Hanson, not an ECMO candidate, recommended comfort measures and withdrawal of care. Epi drip started at 0.02mcg/kgmin for low BP. 400cc urine emptied from foley . Plan discussed with parents, agreed on admission on PICU and continuation of care."

In the ED: Patient arrived coding and intubated. ROSC in 45 mins.

In the ED: Patient received epinephrine 0.3 mg x 4, 80 meq bicarbonate, 600mg calcium. She had torsades -> received 2 g magnesium. Pneumothorax ruled out. Started bicarb drip.

Received 20 mg Pepcid, 50 mg Benadryl, and 0.3mg IM epinephrine. Foley catheter was placed. Central line and arterial line was placed by Dr. Pruitt. 24 mg dexamethasone was given."

…"On my initial exam the patient had fixed and dilated pupils about 6 mm bilaterally. She continued to have difficulty with ventilation. On auscultation, patient had very minimal air movement with some sparse crackles. Peak pressures were in the high 40s on the ventilator. We made ventilator changes that we could in order to try and optimize oxygenation and ventilation. Chest x-ray showed hyperinflated lungs and a narrow cardiac silhouette. Over the course of the time in the PICU, the patient has had a worsening tachycardia, most likely secondary to combination of continuous albuterol, continuous epinephrine infusion, and the initiation of diabetes insipidus which is led the patient volume depleted. We have started vasopressin and are titrating up in order to try and decreased urine output, which should allow us to have volume replacement and better cardiac output."

…"I have had extensive conversations with parents about her prognosis, and they understand that it is very poor. I fully expect that she will either die tonight or tomorrow night secondary to repeat cardiac arrest, or she will be declared brain dead. Multiple neurologic exams have shown no cranial nerve function at this point time. In addition, she has had the diabetes insipidus that I mentioned earlier. If she survives the night, she will be at approximately 24 hours of admission tomorrow afternoon and so all of the first brain death exam will be sometime tomorrow afternoon with the second brain death exam the following morning."

On January 19, 2023 she was diagnosed with brain death and passed away.

**Discussion**

This case involves an anaphylactic reaction leading to brain hypoxia and  death.

Reviewing this case there are several elements to consider.  The first is did Emerson have an allergic reaction? The answer is clearly yes.  She exhibited typical allergic symptoms including difficulty breathing, wheezing (requiring breathing treatment), vomiting and a known prior history of food allergy for which she was prescribed an epinephrine autoinjector.  It is clear to me based on the medical records and diagnoses given that her medical providers were in agreement that the primary cause for her hypoxia and cardiac arrest was anaphylaxis.

The second element is what likely triggered her anaphylaxis.  Given Emerson had a known prior milk allergy and had just recently eaten pizza, that this trigger appears to be the most likely cause of her anaphylaxis.

The third element relates to the care she received at Lorenzo De Zavala Middle School upon presenting to the nurse's office in respiratory distress.  It is unknown to me what school representative or medical professional was responsible for Emerson's care when she presented.  Emerson was initially given Benadryl (which she vomited) and then an albuterol treatment for her symptoms.  This was not appropriate care.  In the setting of a child with a known history of food allergy who presents with difficulty breathing (and then vomiting) the only initial appropriate treatment is immediate administration of intramuscular epinephrine.  Benadryl would not be helpful in an anaphylactic reaction and would not be considered first line therapy.  Albuterol (breathing treatment) would be helpful for an asthma exacerbation but should not be used as first line therapy in anaphylaxis.  In this case Emerson began becoming cyanotic and required CPR and attempted defibrillation prior

to EMS arriving, yet she was not given the correct life saving therapy which would have been intramuscular epinephrine. It is my opinion, that had she received prompt administration of epinephrine when she initially presented with her symptoms Emerson would, more likely than not, be with us today. I understand Emerson's grandmother, Carole Kroger was present for some of her care at the Middle School in addition to school staff subsequent to her initial presentation to the nurse's office. It is my understanding that Emerson never received her epinephrine autoinjector that was stored at the school and only received epinephrine once EMS arrived on the scene when she was already in cardiac arrest.

It is important to note that early administration of epinephrine is well known to be the most important factor when looking at morbidity and mortality associated with anaphylaxis. Concomitant asthma (which Emerson has) can also contribute to more severe anaphylactic reactions. In this case, even if Emerson were having a severe asthma episode (instead of anaphylaxis) intramuscular epinephrine would have still been an appropriate treatment as this is well known to improve asthma symptoms (via bronchodilation) as well. Essentially, whether this was a severe asthma exacerbation or anaphylaxis from an allergic trigger (as it was), epinephrine would have been the appropriate treatment and would have likely saved Emerson's life. If given early, while she was in the care of the middle school's staff, it is my opinion she would more likely than not be a normal healthy child today. If anaphylaxis is allowed to progress without epinephrine treatment then the result is laryngeal edema (throat swelling), asphyxia (lack of oxygen getting to the tissues due to blockage of the upper airway), low blood pressure and ultimately cardiopulmonary arrest. This results in lack of oxygen to the brain and brain damage or brain death.

Early administration of epinephrine is critical for survival after severe anaphylaxis. Early administration of epinephrine is the gold standard for anaphylaxis treatment in virtually all allergy textbooks and references. On of many examples in the literature proving this point from the New England Journal of Medicine is Simpsone et al. (Fatal and near-fatal anaphylactic reactions to food in children and adolescents. N Engl J Med. 1992;327(6):380. ):

A series of 13 fatal and near-fatal food-induced anaphylactic reactions in children and adolescents suggested that epinephrine is most effective when given in the initial 30 minutes of the reaction. Epinephrine was administered within this time period in six of seven children who survived, whereas only two of six patients who died received the drug within the first hour. The authors concluded: "Dangerous anaphylactic reactions to food occur in children and adolescents. The failure to recognize the severity of these reactions and to administer epinephrine promptly increases the risk of a fatal outcome."

**Conclusion**

As a board-certified allergist, it is my opinion, that Emerson Cole suffered a severe anaphylactic reaction while in the care of the staff of Lorenzo De Zavala Middle School. The school was aware of her food allergy history and stored an epinephrine autoinjector were she to have an allergic reaction. She presented with typical symptoms of an allergic reaction, and yet was not given her life-saving medication. This delay and deviation from the standard of care tragically resulted in her death. It is my opinion that had she been promptly given her epinephrine that it is more likely than not that her anaphylactic reaction would have resolved without significant morbidity or mortality.

Sincerely,

M. Serto

Marc Serota, M.D.
Board Certified Allergy/Immunology, Dermatology and Pediatrics



**Marc Serota M.D., FAAD, FAAAI, FACAAI**
Board Certified: Dermatology, Allergy/Immunology, Pediatrics
852 Pontiac St.
Denver CO 80220
mj.serota@gmail.com

E-mail:
mj.serota@gmail.com

Phone (cell):
816-679-2211

**Medical Education:**
University of Missouri Kansas City School of Medicine, Kansas City, Missouri
08/2001 - 05/2007
B.A./M.D., 05/2007

**Education:**
Graduate - University of Missouri Kansas City, Kansas City, Missouri
Liberal Arts/Medicine - Six Year Combined BA/MD Program
08/2001 - 05/2007
B.A./M.D., 05/2007

**Professional training:**

Pediatrics Residency (July 2007- June 2010)
Cohen's Children's Hospital
New Hyde Park, NY
Board Certified in Pediatrics.

Allergy/Immunology Fellowship (July 2010- June 2012)
Children's Mercy Hospital
Kansas City, MO
Board Certified in Allergy/Immunology.

Dermatology Residency (July 2012-June 2015)
University of Colorado Denver
Denver, CO
Board Certified in Dermatology.

**Work experience following training:**

Peak Dermatology
Position: Physician (General/medical dermatology and allergy/asthma/immunology)

Colorado Dermatology Specialists (August 2015 – December 2017)
Position: Physician (General/medical dermatology and allergy/asthma/immunology)

Veteran's Affairs Hospital Denver (August 2016 – current)
Position: Physician and Attending/Supervising physician.
Position: Reading and generating reports for the Denver VA teledermatology program covering CO, OK and MT.  Attending dermatologist supervising outpatient and inpatient consults at the VA hospital in Denver Colorado.

University of Colorado (August 2016 – current)
Position: Supervising physician in Dermatology.

www.Healthtap.com (August 2014 – current)
Position: Founding doctor and dermatologist/allergist practicing telemedicine for dermatology and general medicine patients.

www.americanwell.com (2017 – current)
Position: Physician dermatology, allergy/asthma/immunology practicing telemedicine.

**Membership and Honorary/Professional Societies:**
Golden Key International Academic Honor Society, American Medical Student Association (AMSA), American Medical Association (AMA), American Academy of Pediatrics (AAP), Fellow, ACAAI, Fellow AAAAI, Fellow FAAD

**Honors / Awards:**
Academic All American; Verizon Academic All-Midwest; Member of Golden Key International Academic Honor Society; Snake Award Winner given annually to the highest achieving medical student group at UMKC; Student Representative at Chancellor's Symposium On Future Planning For Statewide University of Missouri System; Elected fellow representative for Children's Mercy Hospital residency council.
FIT Travel grant for 2011 AAAAI National meeting
FIT Travel grant for 2012 ACAAI National meeting
FIT Travel grant for 2012 AAAAI National meeting
Resident Travel grant for 2013 AAD National meeting

**Certification/Licensure:**
ACLS
PALS
NALS
Colorado Medical License
New York Medical License
Florida Medical License
Missouri Medical License
Montana Medical License
New Hampshire Medical License
Mississippi Medical License
Alabama Medical License
Hawaii Medical License
Nebraska Medical License
Kansas Medical License
South Dakota Medical License
Texas Medical License
Wyoming Medical License
Utah Medical License
Nevada Medical License
Arizona Medical License
Washington Medical License
West Virginia Medical License
Iowa Medical License
Idaho Medical License
Louisiana Medical License
Wisconsin Medical License
Illinois Medical License
California Medical License
North Carolina Medical License

South Carolina Medical License
Maryland Medical License
North Dakota Medical License
Michigan Medical License
Pennsylvania Medical License
Connecticut Medical License
New Mexico Medical License

**Board Certified in Pediatrics**
**Board Certified in Allergy/Immunology**
**Board Certified in Dermatology**

**Examinations:**
Dermatology Board Certification Exam Passed 10/15
Allergy/Immunology Board Certification Exam Passed 12/12
Pediatric Board Certification Exam Passed 10/10
USMLE Step 3 Passed 2/2008
USMLE Step 2 CS (Clinical Skills) Passed 10/2006
USMLE Step 2 CK (Clinical Knowledge) Passed 12/2006
USMLE Step 1  Passed 06/2005

**Publications:**

Peer Reviewed Journal Articles/Abstracts

Meth M.J., Serota M., Rosenthal D.W., Santiago M.T, Cavuoto M.A.. High Frequency of CF Transmembrane Conductance Regulator (CFTR) Mutations in a Population with Persistent Asthma and Chronic Rhinosinusitis. AAAAI Annual Meeting 2009 abstract/ poster presentation.

Serota M, Barnes C, Meng J.  The Relationship Of Sensitization And Specific IgE With Age In A Pediatric Population With Asthma.  AAAAI Annual Meeting 2011 abstract/poster presentation.

Serota M, Portnoy J.  Accelerated Immunotherapy Schedules for Aeroallergens.  Up to date online medical reference.

Serota M. Portnoy J.  Accelerated Immunotherapy Schedules for Venom Immunotherapy.  Up to date online medical reference.

Serota M. Portnoy J. Clinical utility of pseudopod development on skin prick testing (under review)

Textbook chapter: The Autoimmune diseases.  Non-bullous skin disease: Alopecia, Vitiligo, Psoriasis and Urticaria.  *Noel R. Rose and Ian R. Mackay.  ISBN-13: 978-0-12-595961-2 ISBN-10: 0-12-595961-3*

Textbook chapter: Fitzpatrick: Dermatology Secrets Plus, 5th Edition.  Chapter 33 Urticaria and Angioedema.

Serota M, Fathi R, Brown M.  Identifying and Managing Local Anesthetic Allergy in Dermatologic Surgery.  Dermatol Surg. 2016 Feb;42(2):147-56

Textbook chapter: Fitzpatrick: Dermatology Secrets Plus, 6th Edition.  Chapter 23 Urticaria and Angioedema.

Odhav A, Ciaccio C, Serota M, Dowling P.  Barriers to Treatment with Epinephrine for Anaphylaxis By School Nurses.  J Allergy Clin Immunol Vol 135 Num 2, Abstract AB211

**Lectures/Presentations/Teaching Experiences:**

National lecture: Children's Mercy Hospital Conferences Online Allergy 8/16/10: Chronic cough

National lecture: Children's Mercy Hospital Conferences Online Allergy 10/4/10: Patient Management Conference.  "Interesting cases in allergy."

Children's Mercy Hospital Conferences Online Allergy 11/22/10: Journal club

National lecture: Children's Mercy Hospital Conferences Online Allergy CME 12/3/10: Reflective practice and leadership: "Medical Poker: How we speak without talking."

National lecture: Children's Mercy Hospital Conferences Online Allergy: 1/7/11: "Mucus and mucociliary clearance."

Catholic Charities of Northeast Kansas 4/1/11 - Keynote speaker discussing atopic dermatitis, allergies and asthma.

National lecture: Children's Mercy Hospital Conferences Online Allergy: 5/13/11: "Stinging insect allergy."

Children's Mercy Hospital Conferences Online Allergy: 10/3/11: Patient Mangement Conference. "Interesting Cases In Allergy."

National lecture: Children's Mercy Hospital Conferences Online Allergy: 11/16/11: Journal Club.

National lecture: Children's Mercy Hospital Conferences Online Allergy: 1/6/12: "Allergic Disease and the Elderly."

National lecture: Children's Mercy Hospital Conferences Online Allergy: 2/6/12: Patient Management Conference.

National lecture: Children's Mercy Hospital Conferences Online Allergy: 3/9/12: Journal Club.

Colorado Dermatologic Society Annual meeting: 9/13: Resident case presentation.

Society Meeting/Keynote speaker: Colorado Allergy Society: "Dermatology for the Allergist": 10/15.

Keynote speaker American College of Allergy, Asthma and Immunology 3/16.  "Atopic Dermatitis."

National lecture for the American College of Allergy Asthma and Immunology: "Dermatology For The Allergist" 2/14, 2/15, 3/16.

National lecture for the American College of Allergy Asthma and Immunology "Local Anesthetic Allergy" 4/16.

Keynote speaker: Aspen Allergy Conference keynote speaker 7/16.  "Biologics In Dermatology."

National lecture: AAAAI National Meeting 3/19. "Dermatology For the Allergist": AAAAI.

Society Meeting/Keynote speaker: Colorado Allergy and Asthma Society: "Dermatology for the Allergist": 12/18.

Society Meeting/Keynote speaker: Colorado Allergy and Asthma Society: "Dermatology for the Allergist": 12/19.

Society Meeting/Keynote speaker: Southeaster Allergy Asthma and Immunology Society: "Dermatology for the Allergist": 9/19.

Society Meeting/Keynote speaker: Southeastern Allergy Asthma and Immunology Society: "Allergic disease of the skin": 9/19.

National Meeting/Keynote speaker: American Osteopathic College of Dermatolgy: "Allergy for the Dermatologist". 9/19.

National Meeting/Keynote speaker: American Osteopathic College of Dermatolgy: "Telehealth for the Dermatologist". 9/19.

Society Meeting/Keynote speaker: Greater Kansas City Allergy Society: "Dermatology for the Allergist." 1/25/20.

**Meetings attended/lectured:**

March 2009 AAAAI National Meeting – Poster presentation
November 2009 ACAAI National Meeting
October 2010 Sixth Annual Healthy Indoor Environments Conference (Overland Park KS)
March 2011 AAAAI National Meeting – Poster presentation
November 2011 ACAAI National Meeting – Oral presentation
March 2012 AAAAI National Meeting – Poster presentation
March 2013 AAD National Meeting
March 2014 AAD National Meeting
March 2015 AAD National Meeting
March 2016 AAD National Meeting.
March 2018 AAAAI National Meeting.
October 2018 Fall Clinical Meeting.
February 2019 AAAAI National Meeting.
March 2019 AAD National Meeting.
September 2019 Georgia Dermatology PEARLS PA conference – Faculty speaker.
September 2020 Dermatology PEARLS Meeting – Keynote speaker
November 2020 ACAAI National Meeting – Keynote speaker
September 2021 Dermatology PEARLS Meeting – Keynote speaker
November 2021 Dermatology Elevate Conference – Keynote speaker
November 2021 ACAAI National Meeting – Keynote speaker
February 2022 AAAAI National Meeting – Keynote speaker
February 2022 Diversity in Dermatology – Keynote speaker

**Volunteer Experience:**
09/ 2004 - 07/2005
UMKC School of Medicine Council on Selection, Missouri
Council On Selection Student Member, Alan Salkind M.D.
I was 1 of 2 elected student representatives to serve on the council on selection.  My responsibilities included interviewing and evaluating applicants to the School of Medicine and making recommendations for acceptance for incoming classes

04/ 2001 - 04/2006
Kansas City Parks and Recreation Department, Missouri
Volunteer soccer coach for underprivileged youth
This volunteer based organization was designed to promote health and wellness as well as a safe

environment for underprivileged youth of Kansas City.  Once a week I very much enjoyed teaching these children not only how to play soccer but also how athletics can build good decision making, team building and how athletics helped shape my future in medicine.

04/2011
Keynote speaker discussing allergies and asthma at Catholic Charities of Northeast Kansas.

**Background, Hobbies & Interests:**

I grew up in Long Island New York and attended the 6 year combined BA/MD program at the University of Missouri-Kansas City.  Throughout college and medical school I played division I soccer with a full athletic scholarship.  I continue to enjoy soccer and most other sports.  I am a professional magician and specialize in close up card magic.

**Professional interests**
During my Allergy/Immunology fellowship I developed an interest in Dermatology and the overlap that exists within the specialties.  I decided to continue my education and pursue a second residency in Dermatology at the University of Colorado Denver.  I am now in private practice in Denver Colorado where I practice both Dermatology and Allergy/Immunology.  My colleagues in both Dermatology and Allergy/Asthma/Immunology consider me an expert in numerous dermatologic conditions such as acne, atopic dermatitis, chronic urticaria, psoriasis, allergic contact dermatitis and immunology/immunologic mediated disease/skin disease.  I lecture both locally and nationally on various topics in dermatology and allergy/asthma.

**Cases retained as a medical expert:**

1. Wang v. Blue Moon Asian Grill: CO, April 2017: Medical expert witness representing disability insurance carrier regarding a respiratory claim involving an exposure at work and ongoing respiratory issues including asthma and vocal cord dysfunction.

2. Oshokoya v. Teltser: Florida: June 2018: Medical expert witness representing physician involving medical malpractice related to allergen immunotherapy and anaphylaxis.

3. Claimant (protected minor) v. Main., Blasberg, Jagminas, Beth Israel Deaconess Hospital-Plymouth, and Plymouth Pediatric Associates: MA: June 2018: Medical expert witness representing claimant, a 13 year old girl who developed Stevens Johnson Syndrome and Toxic epidermal necrolysis triggered by a prescribed medication and subsequent misdiagnoses of her condition.

4. Kent v. Ewanowski Florida: July 2018: Medical expert witness retained to evaluate claim of a patient seeking damages related to Mohs surgery and repair.

5. State of New York Department of Social Services Nassau County v. LeBlanc: September 2018: NY: Medical expert witness representing respondent regarding a claim that parent was negligent in the death of their infant child from respiratory causes.

6. Bey, Phillips, Seymour and Joseph v. FDNY (Federal court NY Southern District): December 2018: Medical expert witness representing plaintiff in disability case regarding a skin condition (pseudofolliculitis barbae) and disability accommodations.
**\*Summary judgement in favor of plaintiffs.  Dr. Serota's expert report was cited numerous times as part of the federal court's decision for summary judgement.  This decision/case has garnered national attention as setting a new precedent for pseudofolliculitis barbae as a disability.**

7. Petrocelli v. Secretary of Health and Human Services: January 2019: Medical expert witness representing plaintiff in possible adverse skin reaction to a vaccine.

8. Mylan Pharmaceuticals v. Almirall LLC: May 2019: Medical expert witness for petitioner regarding infringement of a patent for a dermatologic medication.

9. Lyttle v. Bart Main, Blasberg and Jagmanas: Sept 2019: Medical expert witness for plaintiff regarding case of Stevens Johnson Syndrome.

10. DeHaven v. Ilyas: Sept 2019: Medical expert for plaintiff regarding Mohs surgery for skin cancer.

11. Millin v. Federal insurance company: Sept 2019: Medical expert for defendant regarding anaphylactic reaction.

12. Egan v. Palace Construction Company and Restoration LLC: Sept. 2019: Medical expert for defendant regarding asbestos exposure and lung disease.

13. Larsen v. Paley: Sept. 2019: Medical expert for plaintiff regarding injuries suffered during cryotherapy procedure.

14. Johnson v. Plumb: Oct 2019: Medical expert for plaintiff regarding injury to spinal accessory nerve during cyst excision.

15. Povondra v. Southwest Airlines: Oct 2019: Medical expert for defendant regarding case of angioedema (lip swelling) related to potential work exposure.

16. Davis v. Cook County Child Protection Department: Oct 2019: Medical expert for defendant regarding injuries/skin findings of a minor child.  **Testimony given on 6/15/21.**

17. Constantine v. Secretary of Health and Human Services: Nov 2019: Medical expert for plaintiff regarding adverse skin reaction to MMR vaccine.

18. Schwarz v. Ricci: Dec 2019: Medical expert for defendant regarding mold exposure in the home.

19. Maxey v. Kinney et al: Dec 2019: Medical expert for plaintiff regarding laser burn injuries.

20. Carter v. Katcher et al: Jan 2020: Medical expert for plaintiff regarding incorrect allergy immunotherapy dose.

21. Collins v. Durgin & Cromwell Lumber Co, Inc: Mar 2020: Medical expert for defendant regarding occupational claim for ulceration on leg.

22. Lopez v. Medline Industries Inc: Mar 2020: Medical expert for defendant regarding occupational claim for allergic contact dermatitis to gloves.

23. Jennings v. Smith: Apr 2020: Medical expert for defendant regarding an occupational claim for occupational respiratory exposure.

24. Daugherty v. Karizma Salon Apr 2020: Medical expert for defendant regarding an allergic contact reaction to hair dye.

25. Gedgoud v. Lab Investment Company June 2020: Medical expert for defendant regarding black mold exposure causing worsening of asthma.

26. Kelly v. Dermatology Center June 2020: Medical expert for plaintiff regarding injuries to the eyes following application of liquid nitrogen.

27. State of CA vs. Grant July 2020: Medical expert for defense regarding suspected child abuse/bruising.

28. Bortner v. Newport August 2020: Medical expert for plaintiff regarding missed diagnosis of scabies.

29. Ramani v. Ramani August 2020: Medical expert for defense regarding suspected non-accidental trauma vs. rosacea on the face.

30. Harty v. Boston Children's Hospital et al September 2020: Medical expert for plaintiff regarding neurogenic itch and missed diagnosis of brain tumor.

31. Varosky v. Romero and YMCA September 2020: Medical expert for plaintiff regarding effects of Clorox spray on the skin and face.

32. Diudonne v. State of New York: September 2020: Medical expert for defendant regarding a criminal case involving suspected child abuse and herpes diagnosis.

33. Mitchell v. Secretary of Health and Human Services: October 2020: Medical expert for plaintiff regarding Idiopathic thromobocytopenic purpura triggered by influenza vaccine.

34. Meador v. Secretary of Health and Human Services: October 2020: Medical expert for plaintiff regarding rheumatoid arthritis triggered by influenza vaccine.

35. Labine v. Secretary of Health and Human Services: October 2020: Medical expert for plaintiff regarding brachial neuritis triggered by influenza vaccine.

36. Tejada v. NYU Langone et al: November 2020: Medical expert for plaintiff regarding pyoderma gangrenosum.

37. Smiley v. Smiley: December 2020: Medical expert for petitioner regarding allergies to dog and peanut.  **Testimony given on 7/15/21.**

38. Mark v. Liska: December 2020: Medical expert for plaintiff regarding missed diagnosis of basal cell carcinoma skin cancer.

39. Wang v. Northeast Atlanta Ear, Nose and Throat December 2020: Medical expert for plaintiff regarding anaphylaxis due to intradermal allergy testing.

40. Demarco v. State: January 2021: Medical expert for defendant regarding claim of elder abuse due to skin ulcerations.

41. Shah v. Gore: January 2021: Medical expert for defendant regarding diagnosis of Stevens Johnson Syndrome/Toxic Epidermal Necrolysis (SJS/TEN).

42. Bielak v. Secretary of Health and Human Services: January 2021: Medical expert for plaintiff Guillain Barre Syndrome triggered by prevnar vaccine.

43. Delacruz vs. American Airlines: February 2021: Medical expert for defendant regarding peanut allergy inhalation exposure on airplane and anaphylaxis.

44. Kelly v. The Strand: February 2021: Medical expert for defendant regarding scalp burns related to hair treatment.

45. McNeal v. Yao: February 2021: Medical expert for plaintiff regarding Stevens Johnson/Toxic Epidermal Necrolysis (SJS/TEN).

46. Harty v. Chua et al: February 2021: Medical expert for plaintiff regarding chronic itch.

# EXHIBIT "C"

## Expert Report of Monica Porras, MSN, RN, NCSN

Monica Porras, MSN, RN, NCSN

Monicas291@msn.com

2/4/2024

Kevin A. Isern
Lovell, Isern & Farabough, LLP
112 SW 8th Avenue, Suite 1000
Amarillo, Texas 79101

Re: Emerson Cole

Dr. Mr. Isern,

The following report is intended to serve as a fair summary of my opinion regarding the applicable standard of medical care for emergencies within the school setting, as of February 4th, 2024. This report summarizes how staff employed by Amarillo ISD failed to meet the standard of care within the school setting when caring for Ms. Emerson Cole during an emergent event related to anaphylaxis. I reserve the right to change my opinion upon receipt and review of additional information.

I.      Credentials

I am an active licensed nurse since 2006 and specialize in pediatrics with a focus in school nursing. I have served as a school nurse for the last 9 years of my career. I am a Nationally Certified School Nurse. Currently I serve as the administrative nurse of a school district that serves over 13,000 students. In this role, I oversee the care provided to students by 27 licensed nurses as well as 3 medical assistants. Additionally, in this current capacity I also advise on the appropriate education and training on the care of students with severe allergies and anaphylaxis. In my current role, I also function as a float nurse and continue to have the opportunity to provide hands on care to students. Lastly, I have experience working on a pediatric floor in a hospital setting, a pediatric department in a clinic setting, and have also worked in an urgent care setting.

II.     Records Reviewed
        I have reviewed the following records regarding Ms. Emerson Cole:
        • AISD New Rules re: EPI use Cole_1-5
        • American Medical Response AMR_1-19
        • Northwest Texas Hospital_NWTH1-622

III.    Summary of Facts

The above medical records reviewed revealed the following details regarding the patient's clinical course:

Emerson Cole was a 10-year-old female with a known history of severe allergies to peanuts, tree nuts, eggs, soy, wheat, beef, and dairy. She also had a known diagnosis of asthma.

On January 17, 2023, Ms. Cole presented to her school clinic feeling unwell after eating pizza in the school cafeteria. Campus staff administered Benadryl which Ms. Cole immediately threw up. At some point, it was reported that Ms. Cole urinated on herself. When Ms. Cole began having trouble breathing, campus staff began administering albuterol. During administration of the albuterol her grandmother arrived. Despite the administration of albuterol

Ms. Cole continued to have difficulty breathing and eventually lost consciousness. It is reported that this is when Ms. Cole's grandmother (a retired Amarillo Fire Department Captain) initiated CPR and 911 was called. It is not specified in the reports whether AISD staff administered Ms. Cole's epinephrine pen and I am not aware that AISD staff administered epinephrine to Ms. Cole.  Upon the arrival of EMS, Ms. Cole was found to be unresponsive, pale, cool, dry without chest rise and absent of carotid pulses.  It is unclear at this time whether Ms. Cole received a dose of epinephrine while awaiting EMS arrival. The first documented dose of epinephrine is provided by EMS which states 0.15 mg of epinephrine was administered to Ms. Cole's right arm at 1229.  Ms. Cole was eventually transported to an emergency room.

      IV.     <u>Standard of Care</u>

- The standard of care for treatment of anaphylaxis in a school setting involves providing training for school staff on food allergies, anaphylaxis, and emergency response as is stated on the Texas Education Agency (TEA) website, <u>Guidelines for the Care of Students with Food Allergies | Texas Education Agency</u>
- Additionally, the standard of care within the school setting involves following the severe allergy action plan which serves as a standing order for providing care to the students in emergency events such as anaphylaxis.
- Epinephrine is the first line treatment for those experiencing anaphylaxis, even in the school setting.  It is best practice to administer epinephrine at the first signs of anaphylaxis rather than to delay, as death due to anaphylaxis is often caused by delayed treatment. Epinephrine is considered a safe medication and its benefits in an anaphylactic event outweigh any potential risks.

I am of the following opinions:

- I have been made aware that "negligence," when used with respect to the conduct of the AISD nursing staff means failure to use ordinary care, that is , failing to do that which a school nurse of ordinary prudence would have done under the same or similar circumstances or doing that which a school nurse of ordinary prudence would not have done under the same or similar circumstances.  I have also been made aware that "ordinary care," when used with respect to the conduct of the AISD nursing staff means that degree of care that a school nurse of ordinary prudence would use under the same or similar circumstances.
- Anaphylaxis is usually defined as a severe allergic reaction that involves more than one organ system. Taking into consideration the symptoms mentioned in the records reviewed it is fair to say that Ms. Cole had at least three organ systems involved during her reaction including the urinary system (as evidenced by urinating herself), the gastrointestinal system (as evidenced by her vomiting) and respiratory (as evidenced by her trouble breathing). The involvement of the three systems mentioned above should have prompted campus staff to administer Ms. Cole's epinephrine pen. From the absence of training documentation and AISD's failure to administer Ms. Cole's epinephrine pen, I must conclude that AISD school staff were not properly trained in food allergies, the recognition of anaphylaxis, and emergency response.
- As there is no mention of AISD staff administering Ms. Cole's epinephrine pen, it is my opinion that AISD staff breached the standard of care, were negligent, did not act with ordinary care and did not appropriately care for Ms. Cole during this event by failing to administer Epinephrine to Ms. Cole during her anaphylaxic event on January 17, 2023. Administration of epinephrine is the first line treatment for anaphylaxis, even in the school setting. Antihistamines (Benadryl) and bronchodilators (Albuterol) should not be depended upon to treat anaphylaxis. Administration of epinephrine should not be delayed when anaphylaxis is suspected and/or recognized.  In this case, the failure of the AISD staff to administer Epinephrine to Ms. Cole during her anaphylaxic event on January 17, 2023, constitutes negligence.

Respectfully,

*Monica Porras, MSN, RN, NCSN*
Monica Porras, MSN, RN, NCSN

# MONICA PORRAS, MSN, RN, NCSN

(325) 227-3866 | monicas291@msn.com

## Work History

**Health Coordinator**                                     8/2020 to Present
San Angelo ISD

**District Nurse**                                     08/2019 to 7/2020
Texas Leadership Academy

**Head Start Health Coordinator**                          10/2014 to 06/2019
San Angelo Independent School District

**Staff Nurse**                                     10/2012 to 01/2014
Shannon Medical Pediatric Clinic

**Pediatric Staff/Charge Nurse**                          07/2006 to 10/2012
San Angelo Community Medical Center

## Education

**Master's in Nursing Administration**
Lamar University, Graduation 2022
**Bachelor of Science in Nursing**
UT At Arlington, Graduation 2019
**Associate of Science in Nursing**
Angelo State University, Graduation 2006

## Certifications

- BLS
- ASHII and AHA CPR Instructor
- Board Certified School Nurse
- Hearing, Vision, Scoliosis, and Acanthosis Screenings

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terri Harrison on behalf of Kevin  Isern
Bar No. 10432900
terri@lovell-law.net
Envelope ID: 88266804
Filing Code Description: PLAINTIFF'S ORIGINAL PETITION (OCA)
Filing Description: Plaintiffs' Original Petition
Status as of 5/30/2024 2:55 PM CST

Associated Case Party: ChelseaKrogerAcosta

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Terri Harrison | | terri@lovell-law.net | 5/30/2024 1:35:22 PM | SENT |
| Kevin Isern | | kevin@lovell-law.net | 5/30/2024 1:35:22 PM | SENT |